Filed 12/9/24  P. v. Keukelaar CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE, | B332174 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA112249) |
| v. | |
| CARLOS RUBEN KEUKELAAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher J. Frisco, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

In December 2020, defendant Carlos Ruben Keukelaar was charged with driving under the influence of alcohol (DUI), with an enhancement for willful failure to consent to a chemical test, and with resisting a peace officer in the discharge of his duties. While awaiting trial, Keukelaar called the police department and spoke at length with the watch commander, offering to make a $25,000 "contribution" to the department in exchange for ending the case against him. As a result of this call, Keukelaar was charged with bribery. The court consolidated the two matters for trial and a jury convicted Keukelaar.

On appeal, Keukelaar contends there was insufficient evidence for the jury to convict him of DUI, to find true the allegation he willfully refused to submit to a chemical test, and to convict him of bribery. He also asserts that the trial court erred in consolidating the charges against him for trial. We reject Keukelaar's challenges to the sufficiency of the evidence supporting his convictions for DUI and bribery, and his contention the court erred in consolidating the charges for trial. We agree with Keukelaar, albeit on other grounds, that the jury's true finding on the enhancement allegation he willfully refused to submit to a chemical test is not supported by sufficient evidence. However, the trial court ultimately did not impose any criminal penalty based on the jury's finding and it is not reflected on the judgment. Accordingly, we affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those portions of the facts and proceedings necessary to discuss the issues raised on appeal.

## A. The People Charge Keukelaar with Driving Under the Influence and Resisting a Peace Officer (Case No. NA112249)

On June 11, 2019, Signal Hill police officer Jorge Ramirez arrested Keukelaar for driving under the influence of alcohol. At the scene, Keukelaar refused to take a preliminary breath test but consented to have his blood drawn. As explained below, he later interfered with the attempted blood draw to the point that Officer Ramirez abandoned it.

In an information filed on December 11, 2020, case No. NA112249, the People charged Keukelaar with DUI with priors (Veh. Code, §§ 23152, subd. (a), 23550; count 1) and with willfully resisting a peace officer (Pen. Code,[1] § 148, subd. (a)(1)). The People alleged as a sentencing enhancement that Keukelaar willfully refused a peace officer's request to submit to a chemical test. (Veh. Code, § 23577.) Keukelaar pleaded not guilty.

## B. The People Charge Keukelaar with Bribery (Case No. NA119837)

On May 12, 2022, Keukelaar called the Signal Hill Police Department and spoke on a recorded line with the watch commander, Sergeant Raul Ramirez. During the call, Keukelaar offered to make a $25,000 contribution to the police department and to drop an excessive force complaint related to his arrest if "this incident went away."

On September 30, 2022, the People filed an information, case No. NA119837, charging Keukelaar with one count of bribery (§ 67) and one count of dissuading a witness (§ 136.1,

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

subd. (b)(2)) based on his May 12 phone call.  The information alleged Keukelaar had previously been convicted of four felonies within the meaning of section 1203, subdivision (e)(4).  The charge of dissuading a witness was later dismissed and is not at issue in this appeal.

## C.    The Two Cases are Joined for Trial

On December 16, 2022, the People moved pursuant to section 954 to consolidate case No. NA112249 (DUI and resisting arrest) and case No. NA119837 (bribery and dissuading a witness).  The People contended "the same nucleus of events" connected both cases in that the alleged bribery was to influence Keukelaar's DUI case, and the People would use the same witnesses and evidence to prove both sets of crimes.  The People further contended joinder would not prejudice Keukelaar because the evidence in each case would be admissible in the other, and the cases were equally strong so that neither would be unfairly bolstered by being tried with the other.

On January 23, 2023, the trial court heard the consolidation motion.  Defense counsel argued that some aspects of the alleged DUI offense, such as the circumstances and evidence of intoxication, would not be admissible in a separate trial of the bribery charge.  Counsel also argued the DUI case was weak because there was no direct evidence of Keukelaar's driving and no evidence of his blood alcohol level.  Counsel further argued the bribery and dissuading a witness charges were weak because the sergeant who spoke with Keukelaar did not have the authority to reduce or dismiss the DUI charge.  Counsel conceded that evidence of the alleged bribery could be used to show consciousness of guilt for the DUI.  At the conclusion of oral argument, the court granted the motion.

4

That day, the People filed a first amended information consolidating cases Nos. NA112249 and NA119837, and Keukelaar pleaded not guilty to the bribery count.

**D.    The Trial**

The jury heard testimony over two days, April 25 and 26, 2023.

      1.    *Prosecution Case*

          a.    *Officer Ramirez finds Keukelaar in a vehicle stopped in a traffic lane.*

Officer Ramirez testified he is employed by the Signal Hill Police Department. On June 11, 2019, at around 1:05 a.m., he was on patrol in the city, parked on Gundry Avenue north of Willow Street. He heard the sounds of an engine revving from Willow Street. When he went to investigate, he found a white Hyundai stopped in the number 3 eastbound lane of Willow Street; he heard the Hyundai's engine revving and saw smoke coming from under the vehicle. Officer Ramirez stopped behind the Hyundai and activated his emergency lights. He then saw Keukelaar exit the vehicle from the driver's door and begin walking towards the patrol car. Keukelaar was stumbling and having a hard time with his balance. Officer Ramirez noticed that the Hyundai was rolling backwards towards the patrol car, so he ordered Keukelaar to get back in his vehicle and stop it. Keukelaar did so, stopping the Hyundai before it struck the patrol car, but the vehicle was now in both the number 2 and 3 lanes.

b.　　*Officer Ramirez and his fellow officer conclude Keukelaar is under the influence of alcohol and arrest him.*

　　Before becoming an officer, Officer Ramirez attended a police academy where he received training on investigating DUIs. In addition, he later attended 32 hours of a seminar on DUI investigations. For the first six months of his time as an officer, he rode with senior officers and observed DUI investigation techniques. His training period ended in about May or June of 2018. Prior to June 11, 2019, he had been responsible for approximately 15 DUI investigations.

　　Officer Ramirez observed that Keukelaar's eyes were bloodshot and watery, and he smelled of alcohol. Officer Ramirez asked Keukelaar where he was coming from and Keukelaar responded "Buena Park"; when Officer Ramirez asked where he was going, Keukelaar again stated "Buena Park." Officer Ramirez pointed out that this did not make sense. Keukelaar started to explain but then changed the subject; he later said he had come from Long Beach. Officer Ramirez observed that Keukelaar's speech "was a little slow" and that "he was fumbling over his words."

　　Officer Ramirez believed Keukelaar was unable to control his vehicle. He pointed out to Keukelaar that he had allowed his vehicle to roll backwards. Keukelaar claimed he was unable to put his manual shift vehicle in gear because of problems with its clutch. Officer Ramirez knew that, even with a clutch problem, a driver should be able to prevent a manual shift vehicle from moving by using the emergency brake.

　　Officer Ramirez told Keukelaar he believed Keukelaar was under the influence of alcohol and began performing a horizontal

6

gaze nystagmus (HGN) test. A "nystagmus" is an involuntary jerking of the eyes. During the HGN test an officer is looking to see if the subject can smoothly follow a stimulus with their eyes. Officer Ramirez initially observed that Keukelaar was unable to smoothly follow the pen the officer was using as a stimulus, but then Keukelaar stopped following the stimulus and the officer was not able to complete the test.[2]

Officer Ramirez asked Keukelaar if he was willing to submit to other field sobriety tests. Keukelaar refused.

After another officer attempted to perform an HGN test, Officer Ramirez offered Keukelaar the opportunity to blow into a preliminary alcohol screening (PAS) device, which is a mobile machine that measures blood alcohol concentration from a person's breath. Keukelaar refused to take the PAS test and stated he would take a blood test.

Officer Ramirez believed that Keukelaar was under the influence of alcohol and could not safely operate a vehicle, based on smelling alcohol on Keukelaar's person, his slurred speech, glassy and bloodshot eyes, "brief" lack of smooth pursuit during the HGN test, stumbling gait, and inability to safely control his vehicle.

---

[2] On cross-examination, Officer Ramirez agreed that the subject is supposed to stand during the HGN test but Keukelaar was seated, and that it was possibly hard for Keukelaar to see because Officer Ramirez was shining a flashlight into his eyes. Officer Ramirez also agreed he had not given Keukelaar full instructions for the HGN test, but explained he was doing the test as a preliminary matter to assess the need for additional testing.

Signal Hill police officer Taylor Byrd also testified. Officer Byrd had received training on investigating DUI at the police academy and attended a 40-hour seminar on the subject. Officer Byrd was on duty in the early morning of June 11, 2019, and responded to a call put out by Officer Ramirez. Officer Byrd smelled an odor of alcohol coming from Keukelaar and observed that he had glassy eyes and slurred speech. Officer Byrd attempted to administer an HGN test, but Keukelaar would not follow his instructions and stared at the officer's chest. However, Officer Byrd did notice a lack of smooth pursuit and some jerking of Keukelaar's eyeball as Keukelaar partially tracked the stimulus before looking away.[3] Keukelaar refused to perform any other field sobriety tests. Officer Byrd formed the opinion that Keukelaar was intoxicated to the extent he could not operate a vehicle safely.

The jury was shown a video recording from Officer Ramirez's body-worn camera depicting the events soon after he arrived at Keukelaar's location on Willow Street. The recording did not capture Keukelaar when he first exited his vehicle upon Officer Ramirez's arrival; the video began when Keukelaar exited his vehicle after having stopped it from rolling into the patrol car. The recording ended as Officer Ramirez was placing Keukelaar in the patrol car to drive to the hospital for a blood test.

---

[3] Keukelaar was seated while Officer Byrd conducted the HGN test. On cross-examination, Officer Byrd agreed that a full HGN test is supposed to be performed while the subject is standing.

        c.       *Officer Ramirez takes Keukelaar to the hospital for a blood draw, but once there they engage in an altercation and no blood draw occurs.*

After Keukelaar's consent to a blood test, Officer Ramirez drove Keukelaar to the hospital. When they arrived, Officer Ramirez had Keukelaar sit down in a chair while the officer turned his attention to the intake process, which included filling out a form. Keukelaar's hands were cuffed behind his back.

A few minutes later, Keukelaar stood up and began repeatedly asking to use the bathroom. Officer Ramirez told Keukelaar multiple times to sit and calm down, and told him he could use the bathroom after the intake process was complete. Keukelaar did not comply with Officer Ramirez's direction to sit down and continued to ask repeatedly to use the bathroom. Officer Ramirez, who was holding a clipboard in his right hand, used his left hand to push Keukelaar back into a seated position, but Keukelaar immediately stood up again and stiffened his body while leaning against the wall. As a result, Officer Ramirez was unable to push Keukelaar back into the seat as Keukelaar outweighed him by at least 100 pounds.

When Officer Ramirez walked away to put down the clipboard, Keukelaar stepped away from the wall. Officer Ramirez returned and attempted to push Keukelaar into the seat; Keukelaar again leaned against the wall and stiffened his body. Officer Ramirez tried to keep Keukelaar pinned to the wall, but Keukelaar resisted and was able to stand up away from the wall while the officer grabbed Keukelaar's hands. After almost three minutes, during which Keukelaar continued to demand to use the bathroom and Officer Ramirez repeatedly told him to "take a seat," the officer called for assistance. Keukelaar

9

attempted to turn around to face Officer Ramirez, who then pulled Keukelaar to the other side of the hallway and attempted to pin him to the wall there. After a few seconds of struggle, Officer Ramirez attempted to pull Keukelaar down to the ground, but Keukelaar resisted and the two stumbled around for approximately 15 seconds until the officer maneuvered them into a corner and some firefighters and medical staff assisted the officer in getting Keukelaar to the ground. Officer Ramirez suffered a scratch on his forearm and sprained his right thumb as a result of the altercation.

Registered Nurse Kyle Peterson testified. He was working at the hospital when Officer Ramirez arrived with Keukelaar. In Peterson's opinion, Keukelaar was not listening to what the officer was saying, and not doing what the officer told him to do. Peterson had dealt with approximately one thousand intoxicated patients in 10 years and outside of work had also dealt with people under the influence of alcohol, and in his opinion Keukelaar probably was intoxicated.

The jury was shown two video recordings of the events at the hospital. One recording, from Officer Ramirez's body-worn camera, began when Keukelaar stood up and insisted on using the bathroom, and ended as Officer Ramirez attempted to take Keukelaar to the ground and the two stumbled around. The other, from a hospital surveillance camera, began when Keukelaar was sitting and ended just after Officer Ramirez and the others were able to get Keukelaar to the ground.

> d. *Officer Ramirez abandons the blood draw after Keukelaar repeatedly interrupts the reading of a required notice.*

After Keukelaar was under control, he was placed onto a gurney and taken to a room. Officer Ramirez went into the room a few minutes later and attempted to read a legally-required admonition to Keukelaar relating to the blood draw, but Keukelaar continually interrupted. Officer Ramirez abandoned his effort and considered Keukelaar to have refused to proceed with the blood draw. Keukelaar did not give a blood sample.

The jury was shown a video recording from Officer Ramirez's body-worn camera depicting this interaction. The video depicts Officer Ramirez telling Keukelaar that he needed to read an admonition and beginning to read aloud from a form, and Keukelaar interrupting twice to discuss the altercation. At that point, the following exchange took place:

Officer Ramirez: "[A]re you gonna take the blood draw or are you gonna refuse?"

Keukelaar: "Blood draw for what?"

Officer Ramirez: "If you don't answer me, I'm gonna take it as a refusal. Okay? And your license will be suspended from one to three years."

Keukelaar: "Okay. I—I haven't done anything wrong." At that point, Keukelaar resumed talking about the altercation; Officer Ramirez attempted to direct Keukelaar back to the issue of the blood draw, but Keukelaar continued to discuss the altercation. Officer Ramirez then left the room.

e.  *Keukelaar calls the Signal Hill Police Department while his DUI case is pending.*

Signal Hill police sergeant Raul Ramirez testified that, while on duty as watch commander in the early morning hours of May 12, 2022, he received a call from Keukelaar on the department's phone. Sergeant Ramirez authenticated a recording of the call which was played for the jury.[4]

In the call, Keukelaar identified himself and stated, "So about, about three years ago, we have the [§] 23152 um, that, um, Signal Hill filed as a felony. It was a no drive. Um, no registration, no BAC [meaning no evidence of blood alcohol content]. Um, and we're looking for resolution. Um, and I was looking for your department to maybe impose upon the District Attorney's office to maybe look into an alternative to this. Um, I'm in a position right now like, um, I have a ranch in South Dakota and, um, I just sold my house in Brentwood. Um, we're willing to make a $25,000 contribution to your department, and we just really would prefer that this incident went away. We got an excessive force report that is due in court on Monday, which I really don't think you guys want to go down that road. Um, but if you have to, I guess, you know, we really don't have a lot of choices." Keukelaar later stated, "we're in a position now that we can just make you get [a] donation to your department for 25 Grand. Um, we would take a Wet Reckless." Sergeant Ramirez

---

[4] Defense counsel conceded in his opening statement that Keukelaar placed the May 12 call. In addition, Sergeant Ramirez authenticated a photograph of the department's phone which showed a call from "C. Keukelaar," and Officer Ramirez listened to the call recording during his testimony and stated that he recognized Keukelaar as the caller.

told Keukelaar, "We don't accept money in exchange to make cases disappear.  Number one, that's unethical."  Keukelaar stated a bit later, "We don't want to get the officer in trouble for the excessive use of force.  You know what I know, I know he, I know he he's [*sic*] doing his job out there."  Sergeant Ramirez then responded, "This isn't how you resolve those things.  Okay.  In fact, I would be highly suspicious of a police department that would take money and [in] exchange not to prosecute a case because there's a slight chance that that officer might be accused of some wrongdoing, that, that that's [*sic*] also incredibly wrong.  I would not even do that.  Um, but I'm not [in] a position to do that anyway."

Keukelaar later stated, "there's an excessive use of force and I don't have the discovery on that," and "I don't wanna blemish a young officer's record."  When Sergeant Ramirez said that discovery requests are not made directly to the police department by the criminal defense team, Keukelaar agreed.  Sergeant Ramirez asked, "Then why [are] we having this conversation?" and Keukelaar responded, "Well, because I, I feel like you might have a little bit of say on how we proceed."

After discussing his claim that he had requested documents from the Signal Hill Police Department relating to excessive force, Keukelaar stated, "What I'm proposing is that we have a civil resolution and we'll also take, you know, and, and you, and you have some sway there.  What I don't want, I don't want to, you know, file another *Pitchess*[5] motion.  I don't want the City Attorney involved.  I don't want this young officer [*sic*].  You guys already have a hard enough job out there.  What I'm saying is

---

[5] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

13

let's just, let's just call it swift on this. Um, and then there will be, as far as my end is concerned, I would like to, you know, make a contribution to your department so that you guys can, and, you know, have dashboard cams or, you know, do something that can help out the community. That's what, what, what I would feel would be a, a proper resolution." Sergeant Ramirez repeatedly told Keukelaar he could not help him, and eventually ended the call.

At trial, Sergeant Ramirez explained that "wet reckless" refers to admitting to reckless driving in exchange for not being prosecuted for DUI. He also explained that "*Pitchess*" refers to a process for a criminal defendant to obtain information about a police department's investigation of various types of misconduct claims asserted against its officers. In addition, Sergeant Ramirez testified that he could hypothetically influence a criminal case, for example by requesting the assigned district attorney to take some action, by telling an officer to not attend court or to testify in a certain manner, or by using his access to department records to destroy evidence.

2. *Defense Case*

The defense called no witnesses.

3. *The Jury Convicts Keukelaar*

On April 27, 2023, the jury found Keukelaar guilty of DUI (Veh. Code, § 23152, subd. (a)), resisting Officer Ramirez in the discharge or attempted discharge of his duties (§ 148, subd. (a)(1)), and bribery (§ 67). The jury found true the allegation that Keukelaar had willfully refused Officer Ramirez's request that he submit to a chemical test. (Veh. Code, § 23577.)

After the jury's verdict, Keukelaar admitted to one prior conviction under Vehicle Code section 23152, subdivision (a) for

14

driving under the influence of alcohol, and three prior convictions under Vehicle Code section 23152, subdivision (b) for driving with a blood alcohol level of 0.08 percent or more.

On June 1, 2023, the trial court sentenced Keukelaar to the upper term of three years on count one (DUI), 364 days in jail on count two (resisting a peace officer) to run concurrently with the sentence on count one, and one year (one-third of the mid-term) on count three (bribery) to be served consecutive to the sentence on count one, for a total prison term of four years. Keukelaar was given 345 days credit for time served.

## DISCUSSION

Keukelaar claims insufficient evidence supported his convictions for DUI and bribery, as well as the finding he willfully refused to submit to a chemical test. He also claims the trial court abused its discretion and violated his procedural due process rights by consolidating the four charges against him for trial.

### A. Sufficiency of the Evidence

#### 1. *Standard of Review*

In reviewing for substantial evidence, an appellate court does not " ' "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1262, italics omitted.) "[W]e examine the entire record, viewing the evidence in the light most favorable to the judgment and presuming in support of the

15

verdict the existence of every fact the jury could reasonably deduce from the evidence.  The issue is whether the record so viewed discloses evidence that is reasonable, credible and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt." (*People v. Llamas* (1997) 51 Cal.App.4th 1729, 1736.)  " 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

### 2. *The DUI Conviction*

Keukelaar was convicted of DUI under Vehicle Code section 23152, subdivision (a), which provides, "It is unlawful for a person who is under the influence of any alcoholic beverage to drive a vehicle."  Under this statute, "the prosecution may prove intoxication . . . by showing that the alcohol made the defendant unable to 'drive . . . with the caution of a sober person, using ordinary care, under similar circumstances.' " (*People v. Lopez* (2012) 55 Cal.4th 569, 574, fn. 1, quoting CALCRIM No. 2110.)  Keukelaar's actions at the scene of the arrest, his conduct at the hospital, and his May 2022 phone call to Sergeant Ramirez are substantial evidence that Keukelaar was intoxicated to a level that he was unable to drive safely.

#### a. *Keukelaar's actions at the arrest scene.*

Keukelaar allowed his Hyundai to roll backwards towards Officer Ramirez's patrol car when getting out of the vehicle. Officer Ramirez had to alert Keukelaar that his vehicle was moving, and Keukelaar then got back into his vehicle to stop it just inches before it hit the patrol car.  Keukelaar provided a false explanation for why he was unable to stop the vehicle, claiming he could not put it in gear when even if that was true he could have stopped the vehicle with its parking brake.  In

16

addition, Keukelaar stumbled and struggled with his balance.  In response to Officer Ramirez's questions, Keukelaar confusingly stated that he was coming from Buena Park and going to Buena Park without further explanation.  When Officer Ramirez pointed out that this did not make sense, Keukelaar changed the subject.

Keukelaar's speech was slow, and he fumbled over his words.  Both Officers Ramirez and Byrd smelled alcohol on Keukelaar and observed that his eyes were bloodshot and watery (Ramirez) and glassy (Byrd).  Both officers began HGN tests and observed that Keukelaar was unable to smoothly follow the stimulus with his eyes, which is indicative of intoxication.  Although both officers testified they administered only "preliminary" HGN tests, neither officer was able to complete the test, and neither administered the test under conditions required for a full HGN test, the evidence of Keukelaar's involuntary eye movement consistent with alcohol intoxication corroborates the other evidence that he was under the influence of alcohol.  (See *People v. Randolph* (2018) 28 Cal.App.5th 602, 612 ["an officer, with adequate training and experience in performing the [HGN] test . . . may . . . testify as to the significance of a defendant's performance on an HGN test"].)

Based on all this evidence, a rational jury could conclude that Keukelaar was intoxicated by alcohol to the point that he was unable to drive safely.  (See, e.g., *People v. McNeal* (2009) 46 Cal.4th 1183, 1198 ["evidence of actual impairment may include the driver's appearance, an odor of alcohol, slurred speech, impaired motor skills, slowed or erratic mental processing, and impaired memory or judgment"].)  Keukelaar contends there was no evidence that he had "driv[en] in an unsafe, erratic, or impaired manner."  This ignores that he got out of his vehicle in

17

the middle of a multi-lane road without first making sure it would not roll backwards or into another lane, which shows he lacked the ability to safely control his vehicle.  In any event, a defendant can be convicted of DUI without direct evidence of erratic driving.  (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 756-757, 769-770; see *People v. Wilson* (1985) 176 Cal.App.3d Supp. 1, 3, 8 [officers found the defendant sleeping in a parked car with the engine running].)

Keukelaar's argument this evidence was insufficient disregards the standard of review, drawing inferences from the evidence in his favor rather than in favor of the jury's verdict. For example, he claims his eyes were bloodshot and watery because of the smoke coming from his vehicle and not because he was intoxicated.  Keukelaar notes that Officer Ramirez conceded on cross-examination he could not definitively rule out that Keukelaar's stumbling might have resulted from Keukelaar trying to quickly get out of a vehicle emitting smoke, and that in Keukelaar's view the video of the events on Willow Street did not "depict[] anything unusual about [his] walk or coordination."  Our task when reviewing for substantial evidence is not to determine if one could draw inferences contrary to those made by the jury. Before we may set aside a verdict for insufficient evidence, the defendant must demonstrate that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conviction. (*People v. Garcia* (2020) 46 Cal.App.5th 123, 169.)  Keukelaar's alternative interpretation of the trial evidence fails that test.

b.      *Keukelaar's conduct at the hospital.*

There was further substantial evidence that Keukelaar exhibited consciousness of guilt as to the DUI charge by refusing to cooperate in having his blood drawn.  Under Vehicle Code

18

section 23612, "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of [Vehicle Code s]ection . . . 23152 . . . ." (*Id.*, subd. (a)(1)(A).) Evidence that a person lawfully arrested for DUI (as Keukelaar indisputably was) refused to comply with an officer's request to take a chemical test to detect the presence of alcohol can be admissible to show consciousness of guilt. (*People v. Sudduth* (1966) 65 Cal.2d 543, 545-546; *People v. Municipal Court (Gonzales)* (1982) 137 Cal.App.3d 114, 119.)

Keukelaar argues there was no substantial evidence that he refused to take the test. He points out that he agreed at the arrest scene to take a blood test and asserts that at the hospital he never verbally refused to take the test. We are not persuaded. A reasonable jury could conclude based on the events at the hospital that, despite previously stating he would prefer a blood test, Keukelaar did not intend to cooperate in having his blood drawn. First, a reasonable jury could conclude Keukelaar attempted to avoid or delay a blood draw by instigating the physical altercation with Officer Ramirez. Keukelaar portrays the altercation as resulting from Officer Ramirez's refusal to allow him to use the bathroom, but Keukelaar insistently requested to use the bathroom even after Officer Ramirez informed him several times he would have to wait; instead, the altercation began when Keukelaar refused Officer Ramirez's repeated commands and attempts at physical control.

Second, a reasonable jury could conclude that Keukelaar failed to cooperate in having his blood drawn after the

19

altercation. Keukelaar thwarted Officer Ramirez's attempt to read the legally required admonition by continually interrupting and changing the subject. When Officer Ramirez asked Keukelaar, "[A]re you gonna take the blood draw or are you gonna refuse?" Keukelaar responded, "Blood draw for what?" Although Keukelaar never gave a final verbal refusal, a rational jury could conclude he failed to cooperate with the blood draw to the point of refusal.

           c.     *Keukelaar's post-arrest telephone call.*

A reasonable jury could also infer consciousness of guilt from Keukelaar's statements during his May 2022 phone call offering to make a payment to the Signal Hill Police Department and/or agree not to make claims that the arresting officer used excessive force in exchange for having his DUI case "[go] away" or the charges reduced to reckless driving. A reasonable jury could infer that Keukelaar made these offers because he believed he was guilty of DUI and would be convicted at trial.

           3.     *Keukelaar's Willful Refusal of a Chemical Test*

The jury found Keukelaar willfully refused Officer Ramirez's request he submit to a chemical test under Vehicle Code section 23577. That statute provides, in relevant part, the trial court "shall impose" specific additional penalties where "a person is convicted of a violation of [Vehicle Code s]ection 23152 . . . , and at the time of the arrest leading to that conviction that person willfully refused a peace officer's request to submit to, or willfully failed to complete, the breath or urine tests pursuant to [Vehicle Code s]ection 23612." (*Id.*, subd. (a).) It further provides, "The penalties in this section do not apply to a person who refused to submit to or complete a blood test pursuant to [Vehicle Code s]ection 23612. . . ." (*Id.*, subd. (c).)

20

Substantial evidence does not support the jury's true finding on this allegation, because there is no evidence that Keukelaar refused to submit to a breath or urine test.[6] The prosecutor argued to the jury that Keukelaar willfully refused a chemical test based on his failure to cooperate with the blood draw, and the People renew the argument on appeal. This argument fails because Vehicle Code section 23577, subdivision (a) does not apply to the refusal to submit to a blood test.[7]

Our conclusion, however, does not require reversal or resentencing because, for reasons not disclosed by the record, the trial court did not impose any additional penalty on Keukelaar under Vehicle Code section 23577, subdivision (a), nor did the jury's finding that Keukelaar had willfully refused to submit to a chemical test otherwise have any impact on the sentence imposed by the court. The trial court did impose the upper term on the DUI charge, but it did so based on its finding that several aggravating factors under California Rules of Court, rule 4.421 applied, none of which related to Keukelaar's failure to submit to the blood test. Additionally, the true finding does not appear on the abstract of judgment.

---

[6] The "breath" test referenced in Vehicle Code section 23577 does not include a PAS test that can be administered at the scene of an arrest. (See Veh. Code, § 23612, subds. (h) [describing a PAS test as "a field sobriety test [that] may be used by an officer as a further investigative tool"] & (i) [arrestee has the right to refuse to take a PAS test].) Thus, Keukelaar's refusal to blow into the PAS device at the arrest scene cannot support a true finding under Vehicle Code section 23577, subdivision (a).

[7] For the same reason, Keukelaar's contention that there is no substantial evidence he refused the blood draw is irrelevant.

21

### 4. *Bribery*

Section 67 provides, "Every person who gives or offers any bribe to any executive officer in this state, with intent to influence him in respect to any act, decision, vote, opinion, or other proceeding as such officer, is" guilty of a felony.  Section 7 defines a " '[b]ribe' " as "anything of value or advantage, present or prospective, or any promise or undertaking to give any, asked, given, or accepted, with a corrupt intent to influence, unlawfully, the person to whom it is given, in their action, vote, or opinion, in any public or official capacity."  (*Id*., subd. (b)(6).)

We disagree with Keukelaar's contention that substantial evidence does not support his conviction on this charge. Keukelaar does not dispute he called Sergeant Ramirez, or what he said during that call.  Keukelaar said he was seeking "resolution" of his DUI charge and offered "a $25,000 contribution to your department" and not to pursue excessive force claims expecting "this incident [would go] away" or in exchange for dropping the DUI charge in favor of a reckless driving charge. Based on these statements, a reasonable jury could conclude Keukelaar was offering to pay money to the Signal Hill Police Department, and to drop claims of excessive force against Officer Ramirez, if Sergeant Ramirez took action to have the DUI charge dismissed or reduced to reckless driving.  As Keukelaar concedes, it does not matter that he offered to pay money to the police department, as opposed to Sergeant Ramirez directly, because "under the Penal Code's definition of 'bribe' a promise to make a payment to a third party or entity may constitute a bribe." (*People v. Moyer* (2023) 94 Cal.App.5th 999, 1010.)  Nor does Keukelaar dispute that there was sufficient evidence for the jury

22

to conclude that Sergeant Ramirez was an "executive officer" under section 67.

Keukelaar's arguments that the evidence was not sufficient to support his bribery conviction all lack merit, as they disregard the standard of review and ask us to draw inferences in his favor rather than in favor of the verdict. Keukelaar claims there was insufficient evidence he acted with the requisite intent because his phone call was "a rambling stream of consciousness," and while he did "mention" a payment to the police department, he discussed several other topics, including the excessive force claim and his need for discovery. This mischaracterizes the conversation between Keukelaar and Sergeant Ramirez. Keukelaar focused on one consistent topic during the conversation: having his DUI case dropped or reduced to a lesser charge. He mentioned paying money to the department in exchange for action on his DUI case three times,[8] and he referred to the excessive force claim and his need for "discovery" as part of his effort to have his DUI case dismissed or the charge reduced. The crime of bribery is complete when the defendant offers a bribe with corrupt intent. (*People v. Finkelstin* (1950) 98 Cal.App.2d 545, 554; *People v. Brigham* (1945) 72 Cal.App.2d 1, 6.)

Keukelaar points out that, during a later part of the call, he purported to deny offering a bribe after Sergeant Ramirez pointed out that what Keukelaar was suggesting was improper. However, a reasonable jury could discount this statement as an

---

[8] Keukelaar's brief contends that he only mentioned a monetary donation once, and "made no further follow-up." That is not true.

23

attempt by Keukelaar to give himself plausible deniability given that Sergeant Ramirez was unwilling to go along with the proposed scheme and pointed out it was improper. " ' "The [offer or] solicitation of a bribe need not be stated in any particular language; such a solicitation may be in the form of words which carry the import of a bribe and were evidently intended to be so understood." ' [Citations.]" (*People v. Pic'l* (1982) 31 Cal.3d 731, 741.)

Keukelaar argues there was no evidence he made an offer "to influence Sergeant Ramirez's actions." We disagree. A reasonable jury could conclude that Keukelaar was asking Sergeant Ramirez to take action to influence the prosecutor to drop the case or reduce the charge to reckless driving, or to take steps that would undermine the case. While the jury could have reasonably inferred this from the totality of the conversation, Keukelaar also made it explicit, responding to Sergeant Ramirez's question, "why [are] we having this conversation?" by stating, "Well, because I, I feel like you might have a little bit of say on how we proceed." Keukelaar also expressed his belief that Sergeant Ramirez had "some sway" over the "resolution" of the DUI charge.

Keukelaar argues there is insufficient evidence he offered a bribe because the person to whom he made the offer had no official power to control the DUI case. However, as Sergeant Ramirez testified, he could have taken acts to influence the DUI case, such as by making a request to the assigned district attorney, telling an officer to not attend court or to testify in a certain manner, or destroying evidence. These would have been "act[s]" taken as "an[] executive officer" within the meaning of section 67. This is so even if doing so would have been illegal or

24

contrary to Sergeant Ramirez's official duties. For example, *People v. Gordon* upheld a bribery conviction where the defendant sought to have a police officer plant illegal drugs and then make an arrest. (*People v. Gordon* (1975) 47 Cal.App.3d 465, 470, 473, disapproved on other grounds in *Stark v. Superior Court* (2011) 52 Cal.4th 368, 407, fn. 15.) The court held, " ' 'The giving or receiving of money . . . for the purpose of influencing official conduct is not deprived of its criminal character by the fact that the action contemplated is not within the officer's jurisdiction." ' [Citations.]" (*People v. Gordon*, at p. 474.)[9]

Lastly, Keukelaar asserts that, even if Sergeant Ramirez had attempted to influence the DUI case by persuading Officer Ramirez to not appear at trial, the tactic would not have worked because the prosecutor had Officer Ramirez's sworn testimony on record from the preliminary hearing. Bribery need not succeed to be a crime. The crime of bribery is complete when the defendant offers a bribe with corrupt intent (*People v. Finkelstin*, *supra*, 98 Cal.App.2d at p. 554), and it is immaterial whether the official accepts the offer, much less whether the official would have succeeded in accomplishing the defendant's objective had the official accepted.

---

[9] Keukelaar contends liability for bribery is limited to seeking to cause acts by an official within their official duties. The cases he cites do not support this proposition, as they all affirmed bribery convictions without any discussion of whether the acts which the defendants sought to induce were within the officials' authority. (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 383 [a "case is not authority for a proposition not considered therein or an issue not presented by its own particular facts"].)

**B.     The Trial Court's Consolidation of Charges for Trial**

Keukelaar lastly challenges the trial court's decision to consolidate the charges against him for trial.  Keukelaar contends the court abused its discretion in allowing this to occur, and that the joint trial violated his due process rights.  We find no abuse of discretion and no due process violation.

Section 954 "permits the prosecutor to combine multiple charges in a single accusatory pleading provided they meet the stated criteria" (*People v. Earle* (2009) 172 Cal.App.4th 372, 386), which include that the "different offenses [are] connected together in their commission."  (§ 954.)  If the offenses are consolidated, they may be tried together in the same case, or "in the interests of justice and for good cause shown," the court has discretion to try some or all of the offenses separately.  (*Ibid*.)  Section 954's provisions raise two distinct questions applicable here:  "Whether the charges are *eligible* for joinder, i.e., satisfy the statutory criteria for joint pleading; and whether, despite their eligibility, they ought to be tried separately to ensure a fair trial."  (*People v. Earle*, at p. 386.)

After the trial court consolidated the accusatory pleadings into one case, Keukelaar did not later move to sever the charges for trial.  However, the prosecutor's motion to consolidate argued the factors that would have been relevant to a motion to sever, and Keukelaar opposed the motion based on those factors.  Accordingly, we reject the People's contention that Keukelaar failed to argue to the trial court that joinder for trial would prejudice him.  Thus, we consider whether the trial court abused its discretion in allowing a joint trial of the four charges.

26

1. *Standard of Review*

" 'Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns into a capital case.' [Citation.]" (*People v. Scott* (2015) 61 Cal.4th 363, 395-396.) "If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." (*People v. Soper* (2009) 45 Cal.4th 759, 774-775.)

"We review the trial court's denial of a severance motion for abuse of discretion." (*People v. Smith* (2007) 40 Cal.4th 483, 510.) In order to show a trial court abused its discretion in denying a severance motion, a defendant "must make a ' "*clear showing of prejudice*" ' " and establish that the ruling " ' " ' " 'falls outside the bounds of reason.' " ' " ' " (*People v. Soper*, *supra*, 45 Cal.4th at p. 774.) "The trial court's denial of a motion to sever must be evaluated in light of the facts and circumstances apparent to the court at the time of its ruling." (*People v. Earle, supra*, 172 Cal.App.4th at p. 387.)

" 'Even if a trial court's severance or joinder ruling is correct at the time it was made, a reviewing court must reverse the judgment if the "defendant shows that joinder actually resulted in 'gross unfairness' amounting to a denial of due

27

process." ' [Citation.]" (*People v. Scott, supra*, 61 Cal.4th at p. 396.)

   2.    *The Trial Court Did Not Abuse Its Discretion*

At the hearing on the prosecution's consolidation motion, Keukelaar conceded that evidence of his statements to Sergeant Ramirez (the basis for the bribery charge) would be admissible in a trial of the DUI charge to show consciousness of guilt. Keukelaar argued that, other than the fact he was being charged with DUI, no evidence of intoxication or the circumstances of the DUI would be admissible in a separate trial on the bribery charge.

Here, all of the evidence supporting the bribery case would be admissible in a trial of the DUI case[10] and a significant portion of the evidence of DUI would be admissible in a trial of the bribery case. The trial court thus acted within its discretion in not severing the charges for trial. As our Supreme Court has observed, "if evidence underlying the offenses in question would be 'cross-admissible' in separate trials of other charges, that circumstance normally is sufficient, standing alone, to dispel any prejudice and justify a trial court's refusal to sever the charged offenses. [Citations.] . . . [C]omplete (or so-called two-way) cross-admissibility is not required. In other words, it may be sufficient,

_____

[10] Keukelaar's appellate brief disputes that evidence of his May 2022 call to Sergeant Ramirez would have been admissible as consciousness of guilt. However, Keukelaar conceded this point at the trial court, and cannot now reverse course on appeal. In any event, in rejecting his substantial evidence challenge, we have already concluded that Keukelaar's statements to Sergeant Ramirez were probative of his consciousness of guilt on the DUI charge.

28

for example, if evidence underlying charge 'B' is admissible in the trial of charge 'A'—even though evidence underlying charge 'A' may not be similarly admissible in the trial of charge 'B.' " (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1221.)

Keukelaar also contends he was prejudiced because evidence of his phone conversation with Sergeant Ramirez bolstered a weak DUI case. This argument fails because, as the defense conceded at trial, evidence of his statements to Sergeant Ramirez were admissible to show consciousness of guilt even if the bribery charge was not tried jointly with the DUI charge.

3. *Joint Trial of the Charges Did Not Result in "Gross Unfairness"*

Keukelaar argues that, even if the court did not initially abuse its discretion in allowing all the charges to be jointly tried, we must reverse because the resulting trial was grossly unfair. "Even if the trial court did not abuse its discretion under state law when it denied a motion to sever under the information available at the time, we still reverse if ' "events after the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of [the] defendant's constitutional right to fair trial or due process of law," ' that is, 'if it is reasonably probable that the jury was influenced by the joinder in its verdict of guilt.' [Citations.]" (*People v. Turner* (2021) 73 Cal.App.5th 117, 127.)

Keukelaar's sole argument as to "gross unfairness" is that he was convicted of DUI "on very weak evidence based on the inflammatory 'bribery' charge and evidence." But the evidence supporting the DUI charge was strong, not weak. In any event, the evidence of the bribery, namely Keukelaar's May 2022 phone conversation with Sergeant Ramirez, was probative of his

29

consciousness of guilt.  Thus, the evidence supporting the bribery charge would have been admissible in connection with the DUI charge regardless of whether Keukelaar was charged with bribery.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.